**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MELINDA S. BLAKE,

      Plaintiff,

vs.                                                    CASE NO.  8:08-cv-851-T-17TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## REPORT AND RECOMMENDATION[1]

    This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of

the final decision of the Commissioner of the Social Security Administration (the

Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB).[2] 42 U.S.C.

§ 405(g).  Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #14,

P's Brief).[3]  Defendant filed his brief in support of the decision to deny disability benefits

(Doc. #15, D's Brief).   The Commissioner has filed the transcript of the proceedings

---

[1]Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 (b), 6(a) and (d); Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2]Although there is some indication in the record that Plaintiff also filed an application for supplemental security income disability benefits on January 12, 2005 (*see* Tr. 41-42, 62-64), there is no separate development of an SSI claim in the record. As the ALJ's decision in this case addresses only the determination for disability insurance benefits under Title II of the Social Security Act through Plaintiff's date last insured of June 30, 2006 (*see* Tr. 12-30), the Court's consideration is limited to the DIB claim.

[3]Hereafter, the Court will identify Plaintiff's brief as "P's brief" and Defendant's brief as "D's brief.

(hereinafter referred to as "Tr." followed by the appropriate page number).[4] The parties did not consent to the exercise of jurisdiction by a magistrate judge and the case has been referred to the undersigned for a report and recommendation.

The Court has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the undersigned **recommends the Commissioner's decision be AFFIRMED**.

## PROCEDURAL HISTORY

In the instant action, Plaintiff filed the current application for DIB on or about January 12, 2005 (Tr. 15, 41, 62).[5] Plaintiff alleged an onset of disability January 1, 2003 (Tr. 62). Plaintiff's applications were denied initially and upon reconsideration. Thereafter, Plaintiff requested an administrative hearing, which was ultimately held on September 18, 2007, in Tampa, Florida before administrative law judge (ALJ) Richard Ouellette (Tr. 15-30).

---

[4]The Court would note for the District Judge and any further appellate review that the submitted transcript was very poorly prepared and assembled. Numerous duplicative records are found, at least one page is inserted upside down, and the numbering of the exhibits as presented to the ALJ is wholly absent. At this stage of review, judicial resources were needlessly expended in the effort to make sense out of a record that was assembled in such haphazard fashion.

[5]As background, it appears, since 1999, Plaintiff has filed a number of prior applications seeking disability compensation under the Social Security Act (*see* Tr. 62-71). The final adjudications of the prior applications are not clear on the record provided in the instant action.

Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Dr. Steven E. Simon, PhD.  Plaintiff was represented during the underlying administrative proceedings by her current attorney of record, Mr. Joel B. Fein (Tr. 54-57).  ALJ  Oullette issued a hearing decision denying Plaintiff's claim for DIB on November 30, 2007 (Tr. 15-30).

Plaintiff requested review of the hearing decision by the Appeals Council (AC); however, the AC denied Plaintiff's request (Tr. 2-4), making the hearing decision the final decision of the Commissioner.  Plaintiff's counsel of record filed the instant action in federal court on May 2, 2008 (Doc. #1).

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION
## AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[6]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ found Plaintiff met the Social Security Act's insured status requirements through June 30, 2006 (Tr. 17, 41).  At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2003 (Tr. 17).  At step two, the ALJ found Plaintiff had severe

---

[6]Unless otherwise specified, all references to 20 C.F.R. will be to the 2009 edition.

impairments identified as "degenerative disk disease (DDD) of the lumbar spine, morbid obesity, carpal tunnel syndrome on the right status post release, noninsulin dependent diabetes mellitus (NIDDM), sleep apnea, osteoarthritis of the right knee, headaches status post cervical spine sprain/strain, status post left ankle sprain/strain, and status post right ankle sprain/strain with chip fracture" (Tr. 17-18).   At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).

The ALJ assessed Plaintiff retained the residual functional capacity (RFC) to perform the exertional demands of light work, with frequent limitation in climbing and working at unprotected heights, occasional limitation (1/3 of the day) in bending, stooping, crouching and kneeling, and the capability to perform "routine, repetitive tasks primarily in the seated position" (Tr. 18).

At step four, the ALJ utilized the services of the vocational expert to help determine Plaintiff could not return to her past relevant work (PRW) (Tr. 29).   However, at step five, based in part on the VE's testimony, the ALJ determined that, "[t]hrough the [date] last insured, considering the [Plaintiff's] age, education, work experience, and residual functional capacity there were jobs that existed in significant numbers in the national economy that she could have performed" (Tr. 29).   Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date of January 1, 2003 through June 30, 2006, the date last insured (Tr. 30).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence

regarding her impairments.  *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, who was born August 23, 1969 (Tr. 42), was thirty-eight years old at the time of the administrative hearing.  According to the evidence of record, Plaintiff completed the tenth grade and was enrolled in the eleventh grade for a brief period of time (*see* Tr. 19, 522).  Plaintiff previously worked as a fast food cook and cashier, a grocery store baker, a convenience store cashier and a laundry mat attendant (Tr. 97-104, 527-532).  In her testimony at the administrative hearing, Plaintiff stated that as a result of a work related injury, she suffers from neck pains and migraines (Tr. 527-530).  The injury occurred on August 30, 2002  when a heavy frying utensil fell on her head while working at Taco Bell (Tr. 369).  In addition to her neck pain, Plaintiff testified that she suffers from pain in both knees and ankles due to separate and isolated incidents occurring prior to the frying pan accident (*see generally*, Tr. 531-535).

Plaintiff raises four  issues on appeal.  Namely, Plaintiff contends that the ALJ erred in: (1) failing to make proper credibility findings as to Plaintiff's testimony and complaints of pain and subjective symptoms; (2) discounting the opinion of a treating physician and according substantial weight to non-examining reviewers; (3) failing to consider the impact

6

of Plaintiff's obesity on her ability to work, as required by Social Security Ruling (SSR) 02-01p; and, (4) failing to consider the combined effects of all Plaintiff's impairments (P's Brief at 3).

Defendant responds that the ALJ's decision applied the correct legal standards, and is supported by substantial evidence (D's Brief at 4-14). More specifically, Defendant asserts the ALJ correctly made specific findings that Plaintiff's subjective testimony of disabling pain was contrary to the evidence, including the reports of treating physicians (*see*, *e.g.*, D's Brief at 7). Defendant asserts the evidence of record fails to show Plaintiff had any significant problems that would cause the Plaintiff's alleged degree of pain (D's Brief at 9-10). Defendant argues the ALJ properly evaluated Plaintiff's obesity and possible impairments under the Regulations and properly evaluated the combined effect of Plaintiff's impairments on her ability to work by adhering to the analysis set forth by the Eleventh Circuit (D's Brief at 11- 12).

The Court will address the issues as raised.

### *Plaintiff's Credibility on Complaints of Pain*

Here, Plaintiff claims the ALJ did not evaluate her statements of pain in accordance with the prevailing law of this circuit (P's Brief at 3-5). Plaintiff correctly cites to the case of *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991) as the precedent the ALJ must follow in determining the credibility of her subjective statements of her condition. Where the ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence for so doing, or the decision must be obvious as to the credibility finding. *Holt v. Sullivan*, 921 F.2d at 1223; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). Under

*Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995), if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, the ALJ must articulate adequate reasons for rejecting allegations of pain. In this case, the ALJ did not reject Plaintiff's testimony outright, but determined that her testimony concerning her subjective complaints of pain was "not entirely credible" (Tr. 21).

Plaintiff testified she was unable to work because of pain every day in her neck, back, knees, ankles, wrists and head (Tr. 524-38). Plaintiff claims her back pain is at a level ten on a ten point scale at least four days per week, with the extreme pain lasting all day, but with medication may be reduced to a level four (Tr. 533-34). Plaintiff also testified she has knee pain at a level of nine on a scale of ten (Tr. 535). She further stated she can not sit or stand for prolonged periods of time and stays in bed for up to eight hours a day (Tr. 536-45).

Plaintiff testified she does not go out often, except shopping where she must use a riding cart (Tr. 525). She also testified that she has difficulty walking and must use a cane or hold on to furniture (Tr. 536). She stated she can no longer drive, except once a month, and must have a neighbor drive her around (Tr. 536). Plaintiff stated she cannot stoop or bend well, nor can she push a mower or lift pans to cook; in fact she stated that her children do all the house work including lawn care and cooking (Tr. 523-24, 541-42). Plaintiff testified she can lift only minimum weight as it takes two hands for her to lift a gallon of milk (Tr. 538).

Contrary to Plaintiff's assertion in her brief, the ALJ's decision shows thorough consideration of Plaintiff's testimony (Tr. 19-20) and of the overall evidence in the record (*see* Tr. 20-27). In evaluating the credibility of Plaintiff's testimony, ALJ Oullette found,

"After considering the evidence of record, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 21.)  Plaintiff correctly notes the ALJ also found, "[t]his lady is at least capable of light work and her credibility is highly suspect" (P's Brief at 4 citing to Tr. 28).

Under the Eleventh Circuit pain standard, a claimant must provide evidence of an underlying medical condition and must produce objective medical evidence confirming the severity of the alleged pain or evidence that the determined medical condition is of the severity which can reasonably be expected to give rise to the degree of pain or symptoms alleged.  *See Holt v. Sullivan*, 921 F.2d at 1223.  In 20 C.F.R. § 404.1529, the Regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques. . . *must be considered* in reaching a conclusion as to whether the individual is under a disability."  42 U.S.C. § 423(d)(5)(A) (emphasis added).

When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence.  *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)  (internal citation omitted).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote v. Chater*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner

as to any fact are conclusive if supported by substantial evidence).

As support for the credibility determination in this case, the ALJ refers to objective medical evidence consisting of the numerous CT scans, x-rays and MRI's that demonstrated essentially normal findings (Tr. 21-25). In determining Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible, the ALJ also points to a number of work releases from physicians stating that Plaintiff could return to light duty work (Tr. 22-23, 27). ALJ Ouellette additionally notes that despite alleging disabling symptoms in 2003, Plaintiff apparently did not see her primary care physician, Dr. Deborah Schultz, M.D., for any treatment that year at all (Tr. 26-27).[7] Furthermore, the ALJ correctly points out that although Plaintiff alleged the onset of disability as of January 1, 2003, Plaintiff was released to regular work activity by one of her treating physicians on May 20, 2003 (Tr. 22).[8]

---

[7]The Court's independent review of the record reveals a gap in treatment notes from Dr. Schultz's office for 2003. A single notation of a phone call from Plaintiff regarding fever, sore throat and chest congestion was made on March 26, 2003 (Tr. 246). Treatment notes from 2001, 2002, 2004 and 2005 are provided (see Tr. 237-85, 399-425, 458-82). The Court does note, however, that the vast majority, if not all, of the treatments notes contained within Tr. 399-425 and 458-82 are duplicative of records in Tr. 237-85.

[8]The medical evidence provided reveals Plaintiff was referred to a number of doctors for evaluation regarding her worker's compensation claim, but that with repeated visits, those doctors also treated Plaintiff. For example, Plaintiff was referred in March 2003 to Dr. Thomas M. Newman, M.D., for a neurological examination, but Dr. Newman also ordered a number of medical tests and saw Plaintiff a number of times before releasing her to regular work status on May 20, 2003 (see Tr. 223, 226-28, 230-31, 320, 334-35). Plaintiff was referred on September 18, 2003 to Dr. Robert C. Henderson, M.D., an orthopedist, for an independent examination (Tr. 210), but Dr. Henderson also ordered additional medical testing and prescribed treatment and medications for Plaintiff from the time of her initial visit on October 2, 2003 through December 30, 2003 when he noted Plaintiff had not returned to him since December 4 and if she was not cooperating with physical therapy she could work light duty (see Tr. 170-210).

Contrary to Plaintiff's suggestion, the ALJ did provide the basis for the Court to determine whether or not the pain criteria was used and properly applied. ALJ Ouellette's findings are reflective of the prevailing law in this circuit and the applicable Regulations. In the instant case, the ALJ outlined the correct legal standard, discussed the medical evidence of record, Plaintiff's testimony and the testimony Plaintiff's lay witness (*see* Tr.18-24). While an ALJ must consider a plaintiff's subjective testimony of pain that restricts his/her ability to work, the ALJ may reject the testimony as not credible and such a determination will be reviewed under the substantial evidence standard. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). The Court's independent review of the record confirms substantial evidence supports the ALJ's findings regarding Plaintiff's credibility.

The ALJ, as fact-finder, when questioning Plaintiff face-to-face, found she was not fully credible. Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ recognized that he had to articulate a reasonable basis for his determination and did so. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

### ***Treating Physician Statements***

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is

unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583. Further, the Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). If an ALJ elects to *disregard* the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. *Id.* (emphasis added).

The ALJ in this case gave little weight to the opinions of Plaintiff's ability to work that were provided by Dr. Victoria Nessel, M.D. (Tr. 27). The ALJ found Dr. Nessel's opinions, as stated in the assessment forms she completed, were "inconsistent with the objective, clinical findings as well as opinions from other treating and examining sources" (Tr. 27). Plaintiff erroneously argues "[t]he ALJ completely disregarded the clinical findings and medical assessments set forth from Dr. Nessel" (P's Brief at 6). Review of the decision reveals otherwise. There is no doubt the ALJ gave serious consideration to the expressed opinions of Dr. Nessel as a significant portion of the decision is dedicated to discussion of Dr. Nessel's treatment records and the questionnaires she completed on Plaintiff's behalf (*see* Tr. 24-27).

It appears from the record that Dr. Nessel first saw Plaintiff on March 14, 2006 (Tr. 137). On that date, Plaintiff was seen for complaints of shortness of breath and cough with a fever and she reported to Dr. Nessel that she had a history of lower back pain, knee pain, leg pain and migraine (Tr. 137). Dr. Nessel diagnosed Plaintiff with obesity, acute bronchitis and acute pharyngitis (Tr. 138). Dr. Nessel's treatment records reflect Plaintiff was seen and treated for routine ailments, check-ups and complaints of chronic pain

through her last appointment on July 11, 2007 when Plaintiff went to the doctor because she felt "crappy" (Tr. 107-38). Dr. Nessel prescribed medications for Plaintiff, ordered medical testing and referred Plaintiff to a specialist who was unable to resolve the issues of her asserted pain. On April 17, 2006, the date of Plaintiff's third office visit, Dr. Nessel completed a form entitled Functional Capacities Questionnaire on which she indicated Plaintiff was unable to work even with restrictions and checked off boxes on the forms that reflect her opinion Plaintiff could not lift more than fifteen pounds, could sit for thirty minutes to an hour, could stand for thirty minutes to an hour, and could not lift, run, climb, balance, stoop, kneel, crawl or crouch (Tr. 148). She further checked the statement, "This person is not able to participate in any activity." (Tr. 150.) On June 29, 2006, Dr. Nessel completed a Medical Verification form for Plaintiff's worker's compensation carrier and filled out another Functional Capacities Questionnaire, the notations on which reflect Dr. Nessel's opinion Plaintiff was unable to work (Tr. 307-09). On September 26, 2006, Dr. Nessel completed another fill in the blank form entitled Diabetes Mellitus Residual Functional Capacity Questionnaire on which she noted exertional and nonexertional limitations that indicate Plaintiff was not able to work (Tr. 293-98).[9]

In his decision to give little weight to Dr. Nessel opinion, the ALJ found other clinical evidence from expert medical sources did not support the limitations Dr. Nessel described, nor did the opinions of other physicians who released Plaintiff to light duty or regular work (Tr. 27). This Court's independent review of the record finds ALJ Ouellette's discussion of

---

[9]The Court notes this form was completed after Plaintiff's date last insured, as were two additional medical verification forms dated February 12, 2007 (Tr. 303) and July 11, 2007 (Tr. 286). Dr. Nessel reports Plaintiff is unable to work on both of the 2007 forms.

the objective medical evidence and the statements from other physicians accurately portrays the evidence of record (*see* Tr. 21-28). In sum, the medical records, including Dr. Nessel's own treatment notes, do not support Plaintiff's assertion of chronic disabling pain. While Dr. Nessel's records of Plaintiff's treatment and testing clearly present a longitudinal picture of an ongoing treating relationship spanning sixteen months, the clinical results of tests she ordered and the treatment records simply do not support the levels of limitations she reported on the referenced forms. The ALJ in this case properly determined to afford little weight to the opinions of Dr. Nessel. *See Phillips v. Barnhart*, 357 F.3d at 1240-41.

## Impact of Obesity on the Ability to Work

Plaintiff argues the ALJ failed to consider the impact of Plaintiff's obesity on her ability to work as required by SSR 02-1p (P's Brief at 7-8). SSR 02-1p provides that while obesity is no longer a listed impairment, its effects and combined effects with other impairments should be considered when evaluating disability.

The ALJ's decision is clear that he considered the impact of obesity, and specifically the requirements of SSR 02-1p, in finding the Plaintiff not disabled. The ALJ found Plaintiff's "morbid obesity" a severe impairment at step two (Tr. 17). At step three, the ALJ specifically considered the Plaintiff's obesity and found neither Plaintiff's obesity nor her sleep apnea met or equaled in severity the criteria of a listed impairment *in any body system* (Tr. 18, emphasis added). In determining Plaintiff did not have an impairment or combination of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ also gave explicit consideration to the musculoskeletal system, which is one of the body systems typically seen to be impacted by a person's obesity (Tr. 15). *See* SSR 02-1p, 2000 WL 628049, *1 (S.S.A. Sept. 12, 2002). Further, the ALJ addressed Plaintiff's weight

14

a number of times throughout the decision, noting that Plaintiff testified at the hearing that she weighed 348 pounds and Plaintiff's medical records showed her weight at 272 pounds in April of 2002 and 325 pounds in May of 2004 (Tr. 19, 22, 23). The ALJ also referred to Plaintiff's weight in noting that Plaintiff was advised on numerous occasions to diet and lose weight (Tr. 23-24, 26). In fact, ALJ Ouellette found Plaintiff's weight "significantly affects her back, knees and ankles" (Tr. 20). Thus, the decision clearly reflects consideration was given to Plaintiff's obesity impairment, singly and in combination with the other impairments.

A review of the evidence of record and filings in the instant case show that Plaintiff has done little more than suggest the ALJ should have speculated as to how her obesity impaired her ability to participate in work related activities. SSR 02-1p provides:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 2000 WL 628049 at *6.

The burden is on the plaintiff to present evidence of any claimed impairment or any combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Here, Plaintiff failed to meet her burden of showing how her obesity affected her other conditions. *See Ingram v. Astrue*, No. 8:08-cv-1591-JDW-TBM, 2008 WL 2943287, *6-7 (M.D. Fla. Jul. 30, 2008) (finding obesity was a factor appropriate for consideration in the plaintiff's RFC, but the plaintiff failed to point to evidence suggesting his obesity further reduced his capacity for work than found in the stated RFC). In this case, the ALJ's consideration of Plaintiff's obesity is further reflected in the assessed residual functional capacity which

found Plaintiff to be capable of a *restricted range of light work*, with limitations on bending, stooping, crouching, kneeling, climbing and working at unprotected heights (Tr. 18). Thus, in evaluating all the evidence, the ALJ properly considered Plaintiff's obesity pursuant to SSR 02-1p.

### ***Combined Effects of all Impairments***

Plaintiff's final assertion of error contends the Commissioner did not consider the combined effects of all her impairments and symptoms when evaluating her disability (P's Brief at 8-10). Plaintiff argues that although the "ALJ did make a finding as to the [Plaintiff] having several severe impairments, he did not make explicit comparison as to how the [Plaintiff's] impairments interact with each other" (P's Brief at 9). Fortunately, both the Regulations and precedential case law provide direction when an issue is raised challenging the ALJ's combination of impairments analysis.

If a claimant has multiple impairments, none of which meets or equals a listed impairment, the medical evidence of record will be reviewed to determine if the combination of impairments is medically equal to any listed impairment. 20 C.F.R. § 404.1526(b)(3). When determining whether the combination of impairments is sufficient to render a claimant disabled, the ALJ will consider the combined effects of all claimant's impairments without regard to whether any such impairment, considered alone, would be of sufficient severity. 20 C.F.R. § 404.1523. "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical

and isolated illnesses.  *Id.*  Statements of the ALJ may make clear that he has considered

the impairments in combination.  *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986);

*accord, Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)

(finding that a claimant does not have "an impairment or combination of impairments listed

in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicates

proper consideration of impairments in combination). In *Jones v. Bowen*, 810 F.2d 1001,

1006 (11th Cir. 1986), after noting the ALJ made an explicit finding that the record did not

establish an impairment or combination of impairments that rendered the claimant disabled,

the court observed, "the Secretary could have set forth more specific findings regarding the

effect of the combination of impairments on Jones's ability to work; however, given the

ALJ's exhaustive consideration of the effect of these impairments on Jones's residual

functional capacity, we conclude that the Secretary's findings were sufficient."

    In the instant case, the ALJ found that  "[t]hrough the date last insured, the claimant

did not have an impairment or combination of impairments that met or medically equaled

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 18).  The

Eleventh Circuit has determined an ALJ's statement that a claimant's severe impairment,

or combination of impairments, do not meet the listings can be taken as evidence that the

combined effects of all impairments was considered.  *Wilson v. Barnhart*, 284 F.3d 1219,

1224-25 (11th Cir. 2002) (*citing Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529,

1533 (11th Cir. 1991)); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986).  All of the

alleged impairments are discussed in the ALJ's decision.  Thus, under *Wheeler* and *Jones*,

it is clear from the ALJ's analysis and wording that he was aware of all Plaintiff's

impairments and considered them in combination as required under 42 U.S.C. § 423(d)(2)(B).

## CONCLUSION

For the reasons stated herein, the undersigned **recommends the Commissioner's decision be AFFIRMED**. The undersigned further recommends each party bear its own fees and costs and the Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**DONE AND ORDERED** at Jacksonville, Florida this 11<u>th</u> day of September, 2009.


*Thomas E. Morris*
_____
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
All counsel of record
The Hon. Elizabeth A. Kovachevich